AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Eastern District of Missouri

FILED
MAR 04 2022
U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

In the Matter of the Search of           )
                                         )
THE TARGET DEVICE DESCRIBED IN           )   Case No.   4:22 MJ 5054 NAB
ATTACHMENT A.                            )
                                         )   SIGNED AND SUBMITTED TO THE COURT FOR
                                         )   FILING BY RELIABLE ELECTRONIC MEANS

**APPLICATION FOR A SEARCH WARRANT**

I, Michael Aronson, a federal law enforcement officer or an attorney for the government request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

THE TARGET DEVICE, more fully described in Attachment A.

located in the ____EASTERN____ District of ____MISSOURI____, there is now concealed

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is (check one or more):

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, U.S.C., 841, 846 | distribution of a controlled substance and conspiracy to possess |
| Title 18, U.S.C., 924 | with the intent to distribute a controlled substance; firearms |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

I state under penalty of perjury that the foregoing is true and correct.

*Michael Aronson*
Applicant's signature

Michael Aronson, Special Agent, ATF
Printed name and title

Sworn, to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41.

Date:   3/4/2022

Judge's signature

City and state: St. Louis, MO

Honorable Nannette A. Baker, U.S. Magistrate Judge
Printed name and title

AUSA: Lisa M. Yemm

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ) | |
| ) | No. 4:22 MJ 5054 NAB |
| THE **TARGET DEVICE,** ) | |
| FURTHER DESCRIBED IN ) | FILED UNDER SEAL |
| ATTACHMENT A. ) | |
| ) SIGNED AND SUBMITTED TO THE COURT | |
| ) FOR FILING BY RELIABLE ELECTRONIC MEANS | |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A SEARCH WARRANT

I, Michael Aronson, being first duly sworn via reliable electronic means, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property – electronic devices – described in Attachment A, which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am and have been a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) since September 2020. I am currently assigned to the Kansas City Field Division, Saint Louis Field Office. I am tasked with investigating violations of the federal arson, explosives, controlled substances, violent crime, and federal firearms laws, among others. Your Affiant has a Bachelor of Science degree in Justice Systems from Truman State University. In December 2008, you Affiant obtained a Missouri Peace Officer Standards and Training (POST) license after attending the Eastern Missouri Police Academy in Cottleville, Missouri. From January 2009 to September 2020, your Affiant was employed as a Police

Officer for the O'Fallon (Missouri) Police Department. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

3. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a) and 846, and Title 18, United States Code Section 924(c) and (j) have been committed by Ashean LOGGINS or other persons known and unknown. There is also probable cause to search the information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

**LOCATION TO BE SEARCHED AND IDENTIFICATION OF THE DEVICE**

4. The property to be searched is:

   **A.** Apple, iPhone, IMEI: Unknown, red PHONE IN A CLEAR CASE WITH "MONEY GET RICH" image, (hereinafter "**Target Device**"). The Device is currently located at the Maplewood Police Department, which is located at 7601 Manchester Rd, St. Louis, MO 63143, within the Eastern District of Missouri. The **Target Device** is described and depicted in Attachment A.

5. The applied-for warrant would authorize the forensic examination of the **Target Device** for the purpose of identifying electronically stored data particularly described in Attachment B.

## TECHNICAL TERMS

6. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device. A wireless telephone may have wireless connection capabilities such as Wi-Fi and Bluetooth.

    b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by

3

  connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that

are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments, or notes) and utilizing computer programs. Some PDAs also function as wireless communication Devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication Devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with

those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g. Pager: A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

h. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

i. Internet: The internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the internet, connections between devices on the internet often cross state and international borders, even when the devices communicating with each other are in the same state.

7. Based on my training, experience, and research, I know that the **Target Device** has capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation Device, and or a PDA. In my training and experience, examining data

6

stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the **Target Device**.

### PROBABLE CAUSE

8.  The following is only a partial summary of the information developed as a result of an investigation by your affiant and other ATF agents and law enforcement officers in order to establish probable cause in support of this search warrant.

9.  On February 8, 2022, officers with the Maplewood Police Department responded to 2600 Bellevue Avenue, Maplewood, Missouri, in reference to a call for a shooting. Upon arrival, officers located the victim, later identified as Jakobe Bass, who was unresponsive and suffering from multiple gunshot wounds. Bass was later pronounced deceased at Barnes Jewish Hospital.

10. During a search of the scene for evidence, officers located two cellular phones, one of which was the **Target Device**, on the ground near where officers believed the shooting occurred.

11. On February 09, 2022, the honorable Judge Hilton, Division B of the Circuit Court of St. Louis County, State of Missouri, issued an order authorizing the search of the two electronic devices, including the **Target Device**, seized by the Maplewood Police Department (MPD) on February 08, 2022 (22SL-ML00201) in connection with MPD's investigation into the homicide.

12. Data extraction of one of the electronic devices revealed it belonged to the victim, Jakobe Bass. An extraction of data stored on the SIM card of the other electronic device (the **Target Device**), indicated a phone number of 314-736-2399. Subsequent investigation of the phone number revealed it was linked to Ashean LOGGINS. Due to the **Target Device** being in

7

"lost iPhone mode," a full data extraction was unable to be completed by investigators. The warrant return was completed by MPD detectives.

13. During MPD's post-*Miranda* interview with LOGGINS, he advised he drove two other subjects, identified as Torriono BAKER and Andre HENDERSON, to meet with and purchase marijuana from Bass. While completing the transaction, the front seat passenger, identified as BAKER, began shooting the victim. During the incident, LOGGINS retrieved his firearm and began firing at the victim; however, he told detectives he thought his firearm had jammed. Also, during the incident, LOGGINS lost his cellular phone. LOGGINS identified his old phone number as 314-736-2399, stating that he had obtained a family member's phone since the homicide.

14. Investigation by the MPD, including LOGGINS' interview as well as video surveillance, indicated LOGGINS was the driver of the vehicle in which the victim was shot. Following the shooting, LOGGINS pulled the victim from the vehicle, left his body on the ground, and drove over the victim as he fled the scene with BAKER and HENDERSON in the vehicle.

15. Following the homicide, the vehicle in which Bass was shot was located in East St. Louis, Illinois after it had been set on fire. Multiple different caliber cartridge cases were recovered from the scene of the homicide and the burned vehicle, indicating more than one firearm had been fired.

16. An examination of the data collected from Bass' phone indicated Bass and LOGGINS had met multiple times over the course of a few months. Specifically, messages from LOGGINS, utilizing the cellular telephone number for the **Target Device,** to Bass's phone

indicated that LOGGINS was engaged in the distribution of narcotics purchased from Bass and that LOGGINS had been using the **Target Device** to communicate with Bass.

17. Based on my training and experience, and discussions I have had with other law enforcement officers, I am informed that individuals engaged in the criminal activities described herein typically utilize electronic devices and mobile telephones for a variety of purposes to advance and commit criminal offenses. Subjects use electronic devices to facilitate their overall schemes and their illicit endeavors. Individuals engaged in the activities described in this affidavit use electronic devices and mobile phones for a variety of reasons including the following:

(a) to communicate with associates and co-conspirators before, during, and after their criminal activities, or to communicate with other non-involved third parties. They do this through via text, voice, video, or photo and on applications running on the device. Applications operated on electronic devices give individuals the ability to communicate anonymously with other persons;

(b) to access contact lists of associates, confederates, and third parties;

(c) individuals take pictures and videos of themselves and associates. The do so to memorialize their activities and the fruits of their illicit activities such as contraband, firearms, and illegally obtained currency. They use the images or to brag to other confederates. These individuals frequently keep photographs on their electronic devices and, as described below, often post the images on social media;

(d) individuals use electronic devices to communicate over online social media platforms such as Facebook, Twitter, Snapchat, etc. They communicate with their associates and confederates over such platforms. They post and display images

and videos of contraband, fruits of their crimes, wealth, and otherwise memorialize criminal activities.

18. During my career as a law enforcement officer, I have conducted numerous drug investigations including those of drug trafficking organizations (DTO). Based on my training and experience in such investigations, including electronic surveillance investigations, I and other members of the investigative team, know that drug traffickers communicate with each other utilizing cellular telephones and other electronic devices to facilitate the overall scheme of their illicit endeavors. In order to be successful, drug traffickers must communicate via telephones or other electronic devices to orchestrate the importation of controlled substances; to manage and maintain contact with drug couriers; to maintain contact with lower-level distributors in their day-to-day operations; to maintain contact with safe house operators where narcotics are stored; and to coordinate the return movement of the drug derived profits back to the sources of supply. Additionally, DTO members hold the belief that they need firearms to protect themselves from rival gangs and to protect their drug trafficking activities.

19. Based on my experience and training, I am aware that individuals engaged in criminal activity as described herein often "dump" or exchange their telephones and electronic devices for new devices. Further insulating themselves from law enforcement detection, such individuals are known to subscribe to telephone and wireless communications and data services in other persons names and to frequently change their telephone number and or ESN's/IMSl numbers.

20. I also know from prior investigations and subsequent de-briefing of involved parties by investigative team members, that person such as those described herein are known to compartmentalize the use of multiple electronic devices. As an example, a subject will use a

certain electronic device to contact sources of supply, another electronic device to contact couriers, and other electronic devices to contact underlings, so forth and so on. Based on my training and experience and that of the investigative team, I know these measures are employed to thwart law enforcement's ability to detect persons engaged in criminal activity and conduct electronic surveillance on co-conspirators. Based on the number of electronic devices seized during this investigation, investigators believe that the targets described herein may be compartmentalizing the use of his electronic devices, as related above. The presence of multiple electronic devices inside the residence in the same bedroom supports this claim.

21. I also know based on my training and experience that individuals involved in the trafficking of narcotics use devices such as the **Target Device** to facilitate their overall schemes and their illicit endeavors. In order to make it easier for drug currency and narcotics traffickers to communicate with one another, their phones and other devices often contain stored telephone numbers, programmed names, addresses, and encrypted codes and names. I also know that the phones and other communication devices of currency and narcotics traffickers often contain voicemails, text messages, photographs and emails relating to communications with co-conspirators, meeting locations as well as the telephone numbers of co-conspirators who have called or been called by the device.

22. The **Target Device** is presently in the custody of MPD and has remained in the continuous and secure custody of MPD and other state law enforcement agencies since it was recovered at the scene of the homicide

23. Based on my training and experience, as well as conversations with cellular phone examiners with the ATF and other federal investigative agencies, I believe ATF and/or other

federal investigators may be able to conduct a more complete data extraction from the **Target Device** than the previous extraction by state investigators.

24. While investigators may already have all necessary authority to examine the **Target Device**, I seek this additional warrant out of an abundance of caution to be certain that an examination of the **Target Device** will comply with the Fourth Amendment and other applicable laws.

25. In my training and experience, I know that the **Target Device** has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the **Target Device** first came into the possession of the investigative agency.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

26. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

27. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **Target Device** was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **Target Device** because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

28. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **Target Device** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose

13

many parts of the **Target Device** to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSION

29.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **Target Device** described in Attachment A to seek the items described in Attachment B.

30.     Because this warrant seeks only permission to examine **Target Device** already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

31.     It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the warrant is relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time. Based upon my training and experience, I have learned that online criminals actively search for criminal affidavits and search warrants via the internet and disseminate them to other online criminals as they deem appropriate, *i.e.*, post them publicly online through the carding forums. Premature disclosure of the contents of this affidavit

and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

*Michael Aronson*

Michael Aronson
Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Sworn to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedures 4.1 and 41 this __4th__ day of March, 2022

_____
The Honorable Nannette A. Baker
UNITED STATES MAGISTRATE JUDGE

# ATTACHMENT A

A. Apple, iPhone, IMEI: Unknown, red PHONE IN A CLEAR CASE WITH "MONEY GET RICH" image, (hereinafter "**Target Device**"). The Device is currently located at the Maplewood Police Department, which is located at 7601 Manchester Rd, St. Louis, MO 63143, within the Eastern District of Missouri.



## ATTACHMENT B

1. All records on the **Target Device** described in Attachment A that relate to violations of Title 21, United States Code, Sections 841(a) and 846, and Title 18, United States Code Section 924(c) and 924(j) and involve Ashean LOGGINS and others known and unknown, including:

   a. Lists of customers and related identifying information;

   b. Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   c. Any information and/or communications related to sources of drugs or drug customers (including names, addresses, phone numbers, or any other identifying information);

   d. Any information recording Ashean LOGGINS' schedule or travel;

   e. All bank records, checks, credit card bills, account information, and other financial records;

   f. Any information related to firearms and ammunition;

   g. Any communications between LOGGINS and Bass, HENDERSON, and/or BAKER;

   h. Any information tending to show any association between LOGGINS, Bass, HENDERSON, and/or BAKER; and

   i. Any information relative to the homicide of Bass.

2. Evidence of user attribution showing who used or owned the **Target Device** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.